Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| CONTINENTAL REALTY SOLUTIONS, PSC<br><br>Recurrida<br><br>v.<br><br>ERMELINDA BURGOS NIEVES, ÁNGEL L. ROSA VILLEGAS, LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS, PERSONA A Y PERSONA B<br><br>Peticionaria | KLCE202301418 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Toa Alta<br><br>Sobre:<br>Cobro de Dinero por Incumplimiento de Contrato<br><br>Caso Número:<br>DO2022CV00029 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de abril de 2024.

Los peticionarios, señora Ermelinda Burgos Nieves, su señor esposo, Ángel L. Rosa Villegas y la Sociedad Legal de Gananciales por ambos compuesta, comparecen ante nos para que dejemos sin efecto la determinación emitida y notificada por el Tribunal de Primera Instancia, Sala de Bayamón, el 10 de octubre de 2023. Mediante la misma, el foro primario declaró *No Ha Lugar* una solicitud de sentencia sumaria promovida por los peticionarios, ello dentro de un pleito sobre cobro de dinero e incumplimiento contractual incoado por la aquí recurrida, Continental Realty Solutions, PSC.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* solicitado y se modifica la *Resolución* recurrida.

Número Identificador

SEN2024 _____

**I**

El 19 de febrero de 2022, la parte recurrida, entidad dedicada al alquiler y venta de inmuebles, presentó la demanda de epígrafe. Mediante la misma, alegó que los aquí peticionarios incumplieron con los términos de un contrato de corretaje entre ellos suscrito el 1 de mayo de 2020, en virtud del cual, estos requirieron los servicios de la corporación para que gestionara el arrendamiento de una de sus propiedades. La recurrida indicó que, como parte de los acuerdos, las partes convinieron que la gestión a ella encomendada debía realizarse dentro de un periodo de noventa (90) días. Añadió que, según lo pactado, el arrendamiento a procurarse habría de ser por un canon mensual de $2,000.00, que la comisión que habría de recibir equivaldría a la totalidad de la renta establecida para un mes, y, que, en caso de mediar una renovación del contrato de arrendamiento por un término mayor a seis (6) meses, al cincuenta por ciento (50%) de la renta de un mes.  A su vez, la parte recurrida indicó que, como parte del contrato de corretaje, se dispuso que, durante la vigencia del arrendamiento, se le autorizaba gestionar la venta del inmueble y que, en caso de que el arrendatario fuera quien adquiriera el mismo, la comisión que cobraría equivaldría al cinco por ciento (5%) de la venta.

En su demanda, la parte recurrida afirmó que cumplió con arrendar la propiedad de los peticionarios en los términos correspondientes, ello mediante un contrato suscrito con el señor Manuel A. Morcote Vargas y su señora esposa, Gladymar Gutiérrez Dávila, con vigencia desde el 1 de mayo de 2020 al 30 de abril de 2021. Según expuso, previo al vencimiento del mismo, llevó a cabo ciertas gestiones para que una tercera persona adquiriera la propiedad. No obstante, la parte recurrida afirmó haber advenido al conocimiento de que, sin mediar su intervención, los peticionarios gestionaron la renovación del contrato con el matrimonio Morcote

Gutiérrez, todo sin informarle y sin pagarle la comisión pagada por dicha transacción. Igualmente, indicó que, poco después, supo que estos adquirieron el inmueble, luego de que los peticionarios directamente gestionaran con estos su venta, ello por la suma de $400,000.00.

La entidad recurrida sostuvo que las actuaciones de los peticionarios constituyeron crasos incumplimientos a los términos del contrato entre ellos suscrito, el cual, afirmó, nunca fue cancelado. De este modo, sostuvo que estos le adeudaban una suma ascendente a $21,000.00 por concepto de la comisión correspondiente a la renovación del arrendamiento de la propiedad, y a su eventual venta, así como una cantidad adicional de $25,000.00 por razón de los daños derivados del incumplimiento aducido. De este modo, solicitó al Tribunal de Primera Instancia que proveyera para el pago de la referida compensación.

El 3 de mayo de 2022, los peticionarios presentaron su escrito sobre *Contestación a Demanda.* En el pliego, negaron las alegaciones hechas en su contra y sostuvieron que lo único que las partes acordaron mediante el contrato de corretaje, fue el arrendamiento de la propiedad en controversia por el término de un (1) año. A su vez, reclamaron la nulidad del referido vínculo y sostuvieron que la única gestión que la parte recurrida efectuó para procurar la venta del inmueble, la hizo en junio de 2021, ya vencido el contrato original de arrendamiento. Los peticionarios, por igual, indicaron que la venta del inmueble en disputa se perfeccionó el 16 de diciembre de 2021, ello mediante su única intervención, toda vez que, según sostuvieron, la parte recurrida incumplió con los deberes inherentes a su encomienda, así como con los estatutos que rigen la ejecución de su negocio, redundando ello en exonerarlos de sus obligaciones. De este modo, los peticionarios solicitaron al Tribunal de Primera Instancia la desestimación de la causa de epígrafe.

Así las cosas, y tras acontecidas ciertas incidencias procesales, el 22 de mayo de 2023, los peticionarios presentaron una *Moción Solicitando Sentencia Sumaria*. En la misma, expusieron que no existía controversia de hechos en cuanto a que el contrato de corretaje en litigio era uno de adhesión, en cuya redacción no participaron. Al respecto, expresaron que el mismo era nulo, toda vez que, contrario a las exigencias legales pertinentes, no indicaba fecha de vencimiento para la gestión encomendada. A su vez, añadieron que nunca se notificó renovación alguna del arrendamiento de la propiedad y afirmaron que sus gestiones para vender el inmueble fueron de buena fe, toda vez la falta de acción de la compañía compareciente. Sobre este particular, y contrario a lo que afirmaron en su alegación responsiva, los peticionarios sostuvieron que tampoco existía disputa en cuanto a que la compraventa de la propiedad por parte de los esposos Morcote Gutiérrez, se efectuó el 17 de septiembre de 2021, ello a dieciséis (16) meses de la firma del contrato de corretaje con la entidad recurrida. Así, y reiterando que ninguna obligación contractual incumplieron frente a la parte recurrida, solicitaron al Tribunal de Primera Instancia que dictara sentencia sumaria a su favor desestimando la demanda de epígrafe.[1] Destacamos que, en lo aquí pertinente, los peticionaros anejaron a su pliego una declaración jurada con fecha del 22 de mayo de 2023, dando fe de que, entre otras afirmaciones, el 17 de septiembre de 2021, el matrimonio Morcote Gutiérrez adquirió el inmueble en litigio mediante el correspondiente negocio de compraventa.

El 5 de julio de 2023, los peticionarios presentaron una *Moción Reiterando Solicitud se Dicte Sentencia Sumaria*. En esta ocasión,

---

[1] Los peticionarios acompañaron su *Moción Solicitando Sentencia Sumaria* con la siguiente prueba documental: 1) copia del contrato de corretaje según suscrito el 1 de mayo de 2020, intitulado *Autorización de Alquiler*; 2) declaración jurada suscrita por los peticionarios, con fecha de 22 de mayo de 2023.

anejaron copia de un extracto de una deposición tomada al representante de la entidad recurrida, el señor Alexis Antonio Cartagena Mirage, en la que, alegadamente, admite que el contrato de corretaje no incluía una fecha de términos para completar la gestión de procurar la venta del inmueble en controversia.

Por su parte, el 6 de julio de 2023, la parte recurrida presentó su *Réplica a Moción Reiterando Solicitud de Sentencia Sumaria.* En específico, planteó que, contrario a lo aducido por los peticionarios, el contrato de corretaje entre ellos suscrito era uno a término, que debía interpretarse conjuntamente con el contenido del contrato de arrendamiento de la propiedad, particularmente con el término pactado. A su vez, la parte recurrida sostuvo que el pliego de los peticionarios incumplía con las normas procesales inherentes al mecanismo adjudicativo solicitado, así como que no exponía argumentos en derecho que respaldaran sus alegaciones. De este modo, la entidad solicitó que se denegara la solicitud de sentencia sumaria promovida por los peticionarios y que se proveyera para la continuación de los procedimientos.[2]

Tras ciertas incidencias, el 11 de septiembre de 2023, los peticionarios presentaron un escrito intitulado *Réplica a Solicitudes de Continental Realty Solutions en Cuanto a Moción Solicitando Sentencia Sumaria.* En lo pertinente, se reafirmaron en sus alegaciones sobre la falta de fecha de terminación del contrato de corretaje, así como sobre su nulidad por ser contrario a ley. Igualmente, expresaron que el escrito de la parte recurrida incumplía con las exigencias procesales establecidas en la Regla 36 de

---

[2] La parte recurrida acompañó su escrito de réplica con la siguiente prueba documental: 1) copia de la deposición tomada al aquí peticionario, señor Rosa Villegas; 2) copia del contrato de corretaje; 3) copia de *Contrato de Arrendamiento* del 30 de abril de 2020, suscrito con el matrimonio Morcote Gutiérrez.

Procedimiento Civil, 32 LPRA Ap. V, R. 36. De esta forma, se reiteraron en su petitorio sobre la disposición sumaria del asunto.[3]

El 10 de octubre de 2023, el Tribunal de Primera Instancia notificó la *Resolución* aquí recurrida y declaró *No Ha Lugar* la *Moción Solicitando Sentencia Sumaria* promovida por los peticionarios. Según concluyó, el caso entre las partes mostraba ciertas controversias medulares de hechos, que impedían preterir el cauce ordinario de adjudicación. En específico, dispuso que existía una genuina disputa en cuanto a si, en efecto, el contrato de corretaje era uno a término, si hubo simultaneidad entre la contratación de los servicios de la entidad recurrida y la ejecución de las gestiones contratadas, así como si las partes cumplieron sus respectivas obligaciones. Igualmente, la sala de origen dispuso que también existía disputa sobre la alegada buena fe de los peticionarios al gestionar, por sí, y sin intervención de la parte recurrida, la venta de su inmueble, las gestiones, si alguna, que efectuó la entidad a tales fines y si esta, deliberadamente, retrasó el ejercicio de su función según los términos del contrato de corretaje. Ahora bien, entre las determinaciones de hechos sobre las cuales el tribunal primario dispuso que no había controversia, se hizo constar, en el Acápite 10, que fue el 17 de septiembre de 2021 cuando los esposos Morcote Gutiérrez compraron el inmueble en litigio.

El 25 de octubre de 2023, los peticionarios presentaron una *Moción de Reconsideración*. En lo aquí concerniente, en el pliego admitieron haber errado respecto a la fecha en la que efectivamente se produjo la compraventa de su propiedad por parte del matrimonio Morcote Gutiérrez. Específicamente, indicaron que la fecha correcta de la referida transacción fue el 16 de diciembre de 2021 y no el 17

---

[3] Los peticionarios anejaron a su escrito lo siguiente: 1) copia de extracto de una deposición tomada al representante de la entidad recurrida, el señor Alexis Antonio Cartagena Mirage y; 2) copia de extracto de la deposición tomada al peticionario Rosa Villegas.

de septiembre de 2021, tal cual afirmado en la solicitud de sentencia sumaria y en la declaración jurada con la cual acompañaron la misma. Los peticionaros acompañaron su escrito con copia de la primera página de la escritura de compraventa pertinente, en la cual se acredita que la misma se suscribió el 16 de diciembre de 2021. El Tribunal de Primera Instancia declaró *No Ha Lugar* la reconsideración de referencia.

Inconformes, el 14 de diciembre de 2023, los peticionarios comparecieron ante nos mediante el presente recurso de *certiorari*. En el mismo exponen los siguientes señalamientos:

> Erró el Tribunal de Primera Instancia al hacer una determinación de hecho material la cual es incongruente con la realidad fáctica relacionado a la fecha de la compraventa de la propiedad siendo un hecho que surge de una escritura pública fehaciente y del expediente judicial.

> Erró el Tribunal de Primera Instancia al no aplicar correctamente el derecho de nuestro ordenamiento jurídico para determinar que el alegado contrato de corretaje no cumple con los requisitos legales.

> Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la Moción de Sentencia Sumaria a pesar de que no existe controversia de hechos materiales.

> Erró el Tribunal de Primera Instancia al hacer determinaciones de hechos incorrectas e inconsistentes con el récord judicial y el derecho aplicable.

Luego de examinar el expediente de autos, procedemos a expresarnos.

**I**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Oriental Bank v. Caballero García*, 2023 TSPR 103, 212 DPR ___ (2023); *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25

(1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y Otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333*.* Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.*, supra pág. 677*; SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.*, supra, pág. 678*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de

sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, pág. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 981-982; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la

Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

**Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

**Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**III**

En la presente causa, los peticionarios plantean que el Tribunal de Primera Instancia erró al denegar su solicitud de sentencia sumaria, ello al reputar las determinaciones de hecho como incongruentes respecto a la prueba documental presentada. En esencia, aducen que el foro de origen tuvo ante sí elementos suficientes para resolver la nulidad del contrato de corretaje, la validez de la venta de su inmueble, así como la inexistencia de obligación legal alguna por ellos incumplida. Habiendo entendido sobre los referidos señalamientos a la luz de los hechos establecidos

y la norma aplicable, resolvemos expedir el auto solicitado y modificar la *Resolución* recurrida.

Un examen de la evidencia contenida en el expediente que nos ocupa, nos lleva a concluir que, conforme resuelto, existen múltiples controversias de hechos en el caso de epígrafe que impiden la preterición del cauce ordinario de los procedimientos. A nuestro juicio, los documentos que tuvimos a nuestro haber revisar, evidencian que, tal cual lo expresamente dispuesto por el Tribunal de Primera Instancia, resulta meritorio definir, con mayor precisión, los términos de la contratación entre las partes, la validez del contrato en disputa a la luz de las exigencias legales aplicables, particularmente lo relacionado a su vigencia,  los respectivos deberes y obligaciones de las partes comparecientes, el cumplimiento o no de estos y sus efectos.

Ahora bien, aun cuando coincidimos en que ciertamente procedía la denegatoria de la solicitud de sentencia sumaria promovida por los peticionarios, intimamos que existe una controversia de hechos adicional que fue inadvertida por el foro primario al momento de disponer del asunto. La más cautelosa revisión de los documentos que acreditan el trámite de la causa de autos, permite entrever un conflicto específicamente relacionado a la fecha en la que los peticionarios afirman que el matrimonio Morcote Gutiérrez adquirió su propiedad, luego de que, por sí mismos, procuraran la compraventa correspondiente.  En su demanda, estos indicaron que dicho negocio jurídico se perfeccionó el 16 de diciembre de 2021.  Igualmente, en el *Informe sobre Manejo de Caso* del 20 junio de 2022, tal fecha se hizo constar como la correspondiente a la escritura de compraventa pertinente. Sin embargo, y en evidente contradicción a las previas aseveraciones, tanto en su *Moción Solicitando Sentencia Sumaria,* como en la declaración jurada que anejaron a la misma, expresamente indicaron

que dicha transacción se efectuó el 17 de septiembre de 2021. Lo anterior muestra que, a fin de dilucidar las alegaciones de la demanda de epígrafe mediante el mecanismo ordinario de adjudicación, el tribunal primario viene llamado a recibir la evidencia necesaria para atender, además de las controversias de hechos por este identificadas, el asunto relativo al efectivo perfeccionamiento de la compraventa en disputa. Si bien, en su *Moción de Reconsideración,* los peticionarios reputan como una equivocación la consignación de esta fecha, somos del criterio de que la cuestión aquí identificada debe auscultarse con rigor, por incidir sobre las reclamaciones de la demanda. Máxime cuando estos, declararon, bajo juramento, que fue el 17 de septiembre de 2021, cuando se produjo el traslado de dominio en cuestión. Por ello, el Tribunal de Primera Instancia erró al consignar tal afirmación como un hecho no controvertido en el caso de autos. Así, por concurrir los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, expedimos el auto solicitado y modificamos la *Resolución* recurrida.

**IV**

Por los fundamentos que anteceden, se expide el recurso de *certiorari* solicitado y se modifica la *Resolución* recurrida, a los únicos fines de aclarar que existe una controversia de hechos sobre la fecha de la compraventa del inmueble en litigio por parte del matrimonio Morcote Gutiérrez.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones